UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DARRICK L. HUNTER,

                Plaintiff,

   v.

JILMA MANESES, *et al.*,

                Defendants.

CASE NO. 3:24-cv-05267-RSM-DWC

REPORT AND RECOMMENDATION

Noting Date: June 17, 2024

The District Court has referred this civil rights action to United States Magistrate Judge David W. Christel. Plaintiff Darrick L. Hunter, proceeding *pro se* and *in forma pauperis*, filed this action pursuant to 42 U.S.C. § 1983 challenging various aspects of his civil confinement at the Special Commitment Center ("SCC"). Dkts. 1-1, 5. After screening Plaintiff's initial complaint and identifying several deficiencies, the Court granted Plaintiff leave to file an amended complaint and, if possible, cure his pleading deficiencies. Dkt. 6.

On May 16, 2024, Plaintiff filed an Amended Complaint. Dkt. 7. Having reviewed and screened these amended pleadings, the Court recommends a partial dismiss of all deficient claims with only these claims and defendants remaining: Plaintiff's first amendment retaliation

REPORT AND RECOMMENDATION - 1

claims against Defendants Tammy Boylan (Count One) and Dominique Miller (Count Four) in their individual capacities. Dkt. 7 at 8–9, 15 (allegations against Defendant Miller) and at 11–12, 16 (allegations against Defendant Boylan). All other claims and defendants should be dismissed from this action.

I. Background

Plaintiff is civilly detained at SCC—a facility owned and operated by the Washington State Department of Social and Health Services ("DSHS") that provides mental health treatment for civilly committed sexual offenders who completed their prison sentences. Plaintiff challenges various conditions at SCC and brings § 1983 claims against ten individual defendants in their official and individual capacities. *Id.* at 3–4, 15–17. All of the individually named defendants are employees of the State of Washington and include: Tabitha Yockey (chief of resident operations at SCC), Shawn Candella (DSHS deputy CEO), Dominique Miller (case manager at SCC), Aleysa Radosteva (clinician supervisor at SCC), Tammy Boylan (visitation room supervisor at SCC), Nicole Brees (legal coordinator at SCC), Danny Martinez and Ginger Hawkins (grievance investigators at DSHS), Robert Hunt (chief grievance investigator for DSHS), and Charri Garber (operator at McNeil Island Wastewater Treatment Plant). *Id.* Plaintiff also lists two state entities as defendants without raising any claims against them. *Id.* at 1.

As before, most of Plaintiff's amended factual allegations concern the way his family photos, magazines, legal mail, and other unspecified personal property has been handled by SCC employees. *Id.* at 5–12. He reasserts his allegations he suffered retaliation at the hands of Defendants Miller and Boylan after he filed—or threatened to file—administrative grievances and/or legal actions against them. *Id*. As he did previously, Plaintiff complains about the administrative grievance procedures at SCC. *Id.* at 13. Finally, Plaintiff complains, for the first

1  time, about the water supply at SCC, which is allegedly contaminated with hazardous chemicals.
2  *Id.* at 13–15.

3  Plaintiff organizes his amended claims into seven counts. In Counts One and Four,
4  Plaintiff alleges Defendants Boylan (Count One) and Miller (Count Four) engaged in first
5  amendment retaliation. *Id.* at 15–16. In Counts One, Two, Four, and Five, Plaintiff alleges
6  Defendants Boylan (Count One), Brees (Count Two), Miller (Count Four), and Rasosteva (Count
7  Five) violated his procedural due process rights by failing to provide notice and an opportunity to
8  be heard before taking certain actions with respect to Plaintiff's personal property. *Id.* In Count
9  Three, Plaintiff alleges Defendants Hunt, Martinez, and Hawkins violated his procedural due
10  process rights by failing to process, inquire, and investigate his administrative grievances. *Id.* at
11  15. In Count Six, Plaintiff alleges a violation of his due process rights arising out of two cell
12  searches directed by Defendants Candella and Yockey. *Id.* at 16. And in Count Seven, Plaintiff
13  alleges Defendants Candella and Garber were deliberately indifferent to his health and safety
14  with respect to "hazardous contaminants" allegedly present in the water supply at SCC. *Id.* at
15  16–17.

16  As relief, Plaintiff seeks compensatory and punitive damages. *Id.* at 21

17  **II.   Discussion**

18  The Court is required to screen complaints brought by individuals proceeding *in forma*
19  *pauperis*. *See* 28 U.S.C. § 1915(e); *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) ("section
20  1915(e) applies to all *in forma pauperis* complaints, not just those filed by prisoners."). As part
21  of this screening, the Court must "dismiss the complaint, or any portion of the complaint, if the
22  complaint: (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted;
23  or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §
24

REPORT AND RECOMMENDATION - 3

1915(e)(2); *see Barren v. Harrington*, 152 F.3d 1193 (9th Cir. 1998). The Court is required to liberally construe *pro se* documents. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). However, even *pro se* pleadings must raise the right to relief beyond the speculative level and must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

For the reasons set forth below, the Court finds the following claims to be deficient and recommends dismissal: Plaintiff's official capacity claims in all counts, his individual capacity procedural due process claims in Counts One, Two, Three, Four, and Five, his individual capacity unlawful search claim in Count Six, and his individual capacity deliberate indifference claim in Count Seven. It is further recommended Defendants DSHS and SCC be dismissed from this action, as Plaintiff alleges no claims against them. The only claims that should proceed are Plaintiff's individual capacity first amendment retaliation claims against Defendants Boylan (Count One) and Miller (Count Four) are sufficient for service. Dkt. 7 at 8–9, 15 (allegations against Defendant Miller) and at 11–12, 16 (allegations against Defendant Boylan).

A.   **Official Capacity § 1983 Claims (All Counts)**

Starting with his official capacity § 1983 claims, Plaintiff may not sue state entities or employees in their official capacities for backwards-facing relief like monetary damages or declaratory judgment. To state a claim under 42 U.S.C. § 1983, Plaintiff must show: (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a "person" acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). When a claim is brought against an individual in their official capacity, the real party in interest for that claim is the government

REPORT AND RECOMMENDATION - 4

entity for which they work, not the individual named in the caption of the complaint. In other words, "a suit against a state official in his official capacity is no different from a suit against the State itself." *Doe v. Lawrence Livermore Nat. Lab'y*, 131 F.3d 836, 839 (9th Cir. 1997) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). However, States and state entities are not "persons" that can be sued under § 1983. *Doe*, 131 F.3d at 839. As a result, a plaintiff generally cannot sue a state employee in their official capacity under § 1983.

There is one exception to this rule. Under the *Ex Parte Young* doctrine, a state employee may be sued in their official capacity by a plaintiff seeking prospective injunctive relief (*i.e.*, a court order that requires some action, other than the payment of monetary damages, to correct an ongoing constitutional injury). *Id.* (citing *Will*, 491 U.S. at 71 n.10 and *Ex parte Young*, 209 U.S. 123 (1908)). This exception is limited by the Eleventh Amendment, which bars claims for all other forms of relief against state employees. *See Doe*, 131 F.3d at 839; *Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016).

Here, Plaintiff lists several entities of the State of Washington in the caption of his Amended Complaint but does not allege any specific claims against these defendants. Dkt. 7 at 1. For this reason alone, Defendants DSHS and SCC should be dismissed from this action.

In addition to these state entities, Plaintiff states he is suing all individually named defendants in their official capacities as employees of the State of Washington. *Id.* However, Plaintiff was advised he may not pursue official capacity § 1983 claims against the State of Washington or state employees for backwards-facing relief like monetary damages or declaratory judgment. Dkt. 6 at 4–5. He was also advised it was unlikely he would be able to cure this deficiency and the Court may recommend dismissal of any deficient official capacity claims reasserted in his Amended Complaint. *Id.* Accordingly, the undersigned recommends

REPORT AND RECOMMENDATION - 5

Plaintiff's official capacity § 1983 claims be dismissed with prejudice for failure to cure deficiencies necessary to state a cognizable official capacity claim against any defendant.

**B.     Individual Capacity Claims (All Counts)**

As for Plaintiff's individual capacity claims, the first step in pleading an individual capacity § 1983 claim is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). On step two, a plaintiff must allege facts showing how the individual defendants caused, or personally participated in causing, the harm alleged in the complaint. *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). A claim may not be brought on the theory a supervisor is vicariously liable for the acts of his or her subordinates. *See Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Rather, a plaintiff must show the supervisor (1) personally participated in or directed the alleged harm or (2) knew of the harm and failed to act to prevent it. *See Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998), *cert. denied*, 525 U.S. 1154 (1999). Sweeping conclusory allegations against an official are insufficient to state a claim for relief. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

    1.   <u>Procedural Due Process (Counts One through Five)</u>

In Counts One through Five, Plaintiff alleges several defendants violated his procedural due process rights in various ways. Plaintiff was previously advised of the deficiencies in these claims and of the consequences for failing to cure his deficiencies. The Court finds Plaintiff's due process claims are again deficient and recommends each claim be dismissed for failure to state a claim.

As explained in the Court's screening order (Dkt. 6), Plaintiff has no stand-alone due process rights to a specific—or even an efficient—administrative grievance procedure. *Ramirez*

*v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a grievance procedure."). The denial, rejection, cancellation, delay in processing, or ignoring of a grievance does not constitute a due process violation. *See Evans v. Skolnik*, 637 Fed. Appx. 285, 288 (9th Cir. 2015), *cert. dism'd*, 136 S. Ct. 2390 (2016) ("An allegation that [an] official inappropriately denied or failed to adequately respond to a grievance, without more, does not state a claim under § 1983.").

Thus, to state a procedural due process claim, Plaintiff must connect the way his administrative grievances were handled to a deprivation of his constitutionally protected liberty or property rights. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Although the loss of personal property without adequate process may be cognizable, the temporary deprivation of personal property does not give rise to a procedural due process claim, nor does the confiscation of legal property if no injury is caused. *Cummer v. Tilton*, 465 F. App'x 598, 599 (9th Cir. 2012). Even where deprivation of a protected interest is alleged, the constitutionally required procedures vary based on the way the deprivation came about. *See Hudson v. Palmer*, 468 U.S. 517, 532–34 (1984) ("The controlling inquiry is…whether the state is in a position to provide for pre-deprivation process."). For example, if a property deprivation results from an "established state procedure," it may be necessary to provide advanced notice and an opportunity to be heard. *See Brown v. Vail*, No. 2:15-CV-0121-TOR, 2018 WL 4183207, at *4–5 (E.D. Wash. Aug. 31, 2018) (quoting *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982)). On the other hand, if deprivation of property results from negligence or unauthorized intentional conduct by a state employee, post-deprivation procedures available under state tort law provide constitutionally sufficient process. *Zinermon v. Burch*, 494 U.S. 113, 129–30 (1990) ("[T]he State cannot be required constitutionally to do the impossible by providing pre-deprivation process.").

REPORT AND RECOMMENDATION - 7

Before turning to a discussion of his due process claims, the Court notes Plaintiff's factual allegations are presented in a single narrative, which makes the factual basis for his individual claims difficult to decipher. This is particularly true of Plaintiff's procedural due process claims in Counts One, Two, Four, and Five, which involve similar allegations about the confiscation of Plaintiff's personal property and legal documents. Plaintiff was previously advised these claims lacked clarity and failure to clarify his claims would result in a recommendation of dismissal. Dkt. 6 at 11. Plaintiff has failed to sufficiently clarify the factual basis of his claims, which has again prevented him from stating a cognizable due process claim. *See Henderson v. Scott*, No. 1:02-cv-05809, 2005 WL 1335220, at *1 (E.D. Cal. May 4, 2005) (noting "it is [a] plaintiff's responsibility to make each claim clear and provide only a short statement of facts supporting [each] claim," and finding *pro ze* complaint deficient where the court "cannot glean what claims for relief might lay hidden in the narration provided.").

In Counts One and Two Plaintiff alleges Defendants Boylan and Brees violated his procedural due process rights by failing to give him advanced notice that his legal documents could be seized, scanned, and held for review. Dkt. 7 at 15. As in his initial complaint, Plaintiff in his Amended Complaint has failed to allege he was permanently deprived of his legal documents or that he suffered an actual injury from the withholding of these documents. *See* Dkt. 6 at 11 (citing *Cummer*, 465 F. App'x at 599). Therefore, Plaintiff's procedural due process claims in Counts One and Two are deficient and should be dismissed.

In Count Three, Plaintiff alleges Defendants Hunt, Martinez, and Ginger violated his procedural due process rights by failing to process, inquire, or investigate numerous administrative grievances. Dkt. 7 at 13, 15. As stated, the mishandling of administrative grievances, without more, does not give rise to a due process claim. *See Evans*, 637 Fed. Appx.

REPORT AND RECOMMENDATION - 8

1  at 288. Because Plaintiff has again failed to connect the way these defendants handled his
2  administrative grievances to a deprivation of a constitutionally protected interest, Count Three
3  should also be dismissed for failure to state a claim.
4       Next, in Counts Four and Five, Plaintiff alleges Defendants Miller and Rasosteva violated
5  his procedural due process rights by failing to provide advanced notice that his personal
6  photographs could be seized for review (Count Four) or copied and scanned for public disclosure
7  (Count Five). Dkt. 7 at 16. Though Plaintiff may not agree with the decisions to review, scan,
8  and retain copies of his personal photographs, this alleged conduct does not equate to a
9  deprivation of his personal property by Defendants Miller and Rasosteva. Thus, Plaintiff has
10 failed to plausibly allege he suffered an actual deprivation relating to his personal photographs in
11 Counts Four and Five, and these deficient claims should be dismissed.
12      Plaintiff's final procedural due process claim is also put forth in Count Four; Plaintiff
13 alleges Defendant Miller violated his procedural due process rights by failing to provide
14 advanced notice before she defaced and destroyed Plaintiff's magazine. Dkt. 7 at 16. Unlike with
15 Plaintiff's other due process claims, the destruction of his magazine may be considered an
16 interference with his protected property right. Even so, Plaintiff alleges Defendant Miller was not
17 authorized to remove, deface, or destroy the pages of his magazine. Dkt. 7 at 8. As the Court
18 previously explained to Plaintiff, the Constitution does not require individuals be provided notice
19 and an opportunity to be heard before every conceivable property deprivation caused by state
20 action. Dkt. 6 at 12 (citing *Zinermon*, 494 U.S. at 129–30). Absent a showing to the contrary,
21 post-deprivation remedies available under Washington state law are sufficient to redress
22 unforeseeable deprivations resulting from the negligence or intentional conduct of state
23 employees. *Id.* (citing Wash. Rev. Code Ann. § 4.92.100). Because this final claim is premised
24

REPORT AND RECOMMENDATION - 9

on the unauthorized conduct by Defendant Miller and he has failed to demonstrate state post-deprivation procedures were inadequate to address his alleged injury, Plaintiff's second due process claim in Count Four is deficient and should be dismissed for failure to state a claim.

      2.   <u>Unreasonable Search (Count Six)</u>

Next, in Count Six, Plaintiff alleges Defendants Candella and Yockey violated his rights when they directed "multiple" searches of his cell "based on a false report." Dkt. 7 at 16. Although this claim is also styled as a due process claim, the Court reviews it as a Fourth Amendment claim for unreasonable searches.

"[T]he Fourth Amendment right of people to be secure against unreasonable searches and seizures" extends to prisoners and civil detainees. *Thompson v. Souza*, 111 F.3d 694, 699 (9th Cir. 1997) (quoting *Michenfelder v. Sumner*, 860 F.2d 328, 332 (9th Cir. 1988)). It is well settled that prisoners have no Fourth Amendment right to privacy in their cells, *Hudson v. Palmer*, 468 U.S. 517, 525–26 (1984), but whether Fourth Amendment protections extend to the cells of civil detainees remains open question in the Ninth Circuit. *Warrior v. Santiago*, No. 1:16-cv-01504-AWI-GSA-PC, 2018 WL 827616, at *3–4 (E.D. Cal. Feb. 12, 2018). Even assuming Plaintiff had a reasonable expectation of privacy in his cell, he has failed to plausibly allege Defendants Candella and Yockey personally violated his Fourth Amendment rights.

In his amended pleadings, Plaintiff complains Defendants Candella and Yockey directed SCC staff to search his cell based on information provided in an allegedly false report authored by Defendant Boylan. Dkt. 5 at 12, 16. Even assuming that, absent this allegedly false information, Defendants Candella and Yockey lacked justification to search Plaintiff's cell, there is no allegation they knew or should have known the information in the report was false. And negligent or innocent mistakes regarding the veracity of information justifying a search do give

REPORT AND RECOMMENDATION - 10

rise to civil liability under § 1983. *See Lombardi v. City of El Cajon,* 117 F.3d 1117, 1123 (9th Cir. 1997) (to be civilly liable for a Fourth Amendment violation, a defendant must have acted "knowingly and intentionally, or with reckless disregard for the truth.") (quoting *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978)). Accordingly, Count Six should be dismissed for failure to state a claim upon which relief can be granted.

        3.    <u>Deliberate Indifference (Count Seven)</u>

Lastly, for the first time in his Amended Complaint, Plaintiff alleges Defendants Candella and Garber were deliberately indifferent to his health and safety with respect to "hazardous contaminants" allegedly present in the water supply at SCC. Dkt. 7 at 13–17. This newly added claim is factually unrelated to his first amendment retaliation claims against Defendants Miller and Boylan, which are adequately pled for service. The Federal Rules of Civil Procedure require unrelated claims against different defendants be pursued in separate lawsuits:

> The controlling principle appears in Fed. R. Civ. P. 18(a): 'A party asserting a claim ... may join, either as independent or as alternate claims, as many claims ... as the party has against an opposing party.' Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. **Unrelated claims against different defendants belong in different suits**, not only to prevent the sort of morass [a multiple claim and multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to [three] the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (citing 28 U.S.C. § 1915(g)) (emphasis added). Therefore, a plaintiff seeking to pursue separate claims against different defendants must either (1) do so in separate actions or (2) plead sufficient facts showing the claims (a) arise out of the same occurrence or series of occurrences and (b) involve a common question of law or fact. *See George*, 507 F.3d at 607; *see also* Fed. R. Civ. P. 20(a)(2) (joinder of defendants not permitted unless both commonality and same occurrence requirements are satisfied).

REPORT AND RECOMMENDATION - 11

   For his first amendment retaliation claims, Plaintiff claims Defendants Boylan and Miller engaged in unlawful retaliation by allegedly providing false statements that interfered with his request for a level advancement and resulted in the search of his cell without cause. Dkt. 7 at 8–9, 15 (Count One against Defendant Miller) and at 11–12, 16 (Count Four against Defendant Boylan). Plaintiff alleges Defendants Boylan and Miller submitted their retaliatory statements after he filed, or threatened to file, administrative grievances and other legal actions against them. *Id.* at 8–9 (Defendant Miller) and at 11–12 (Defendant Boylan). In contrast, Plaintiff's deliberate indifference claims against Defendants Candella and Garber concern the alleged presence of harmful chemicals in SCC's water supply. *Id.* at 13–15. Plaintiff claims Defendants Candella and Garber failed to prevent him from showering in these chemicals and, as a result, he suffered skin irritation, such as itching, lesions, and eczema. *Id.* at 13–16.

   The above-described claims, which are brought against different defendants, do not arise out of the same occurrence or series of occurrences, nor do they involve common questions of law or fact. As such, Plaintiff's first amendment relation claims and his deliberate indifference claim must be pursued in separate actions. As the former are ready for service, the latter should be dismissed without prejudice to refiling in a separate action.[1]

### III. Conclusion

   For the reasons outlined above, the undersigned recommends Plaintiff's official capacity claims in all counts, his individual capacity procedural due process claims in Counts One and Four, and his individual capacity claims in Counts Two, Three, Five, and Six be dismissed with prejudice. It is further recommended Plaintiff's individual capacity deliberate indifference claims

---

[1] The recommendation to dismiss Plaintiff's individual capacity deliberate indifference claim without prejudice has no bearing on the merits of that claim. In the event Plaintiff pursues his deliberate indifference claim in a separate action (and proceeds *in forma pauperis* in that action), he will again be subject to the screening requirements of 28 U.S.C. § 1915(e).

in Count Seven be dismissed without prejudice to being refiled in separate action. Finally, the undersigned recommends Defendants Department of Social Health Services and Special Commitment Center be dismissed from this action. If the District Court agrees with this Report and Recommendation, the undersigned will, in a separate order, direct service of Plaintiff's first amendment retaliation claims against Defendants Tammy Boylan (Count One) and Dominique Miller (Count Four) in their individual capacities.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the District Judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on June 17, 2024, as noted in the caption.

Dated this 31st day of May, 2024.

David W. Christel
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13