UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DARRICK L. HUNTER,

                Plaintiff,

     v.

TAMMY BOYLAN, et al.,

                Defendants.

CASE NO. 3:24-cv-05267-RSM-DWC

REPORT AND RECOMMENDATION

Noting Date: November 14, 2024

       The District Court has referred this civil rights action to United States Magistrate Judge David W. Christel. Plaintiff Darrick L. Hunter, proceeding *pro se* and *in forma pauperis*, filed this action pursuant to 42 U.S.C. § 1983, challenging various aspects of his civil confinement at the Special Commitment Center ("SCC"). Presently before the Court is the Motion to Dismiss filed by Defendants Tammy Boylan and Dominique Miller (collectively "Defendants"). Dkt. 17.

       After consideration of the relevant record, the Court recommends the Motion to Dismiss be granted and that Plaintiff be given leave to amend his First Amendment retaliation claims against Defendants Boylan and Miller.

REPORT AND RECOMMENDATION - 1

## I. Background

At the time the actions giving rise to this lawsuit occurred, Plaintiff was civilly detained at SCC—a facility owned and operated by the Washington State Department of Social and Health Services that provides mental health treatment for civilly committed sexual offenders who completed their prison sentences. Following screening of his initial complaint, Dkt. 5, the Court declined to serve the complaint but allowed him to file an amended complaint, Dkt. 6. After the Plaintiff filed his Amended Complaint, Dkt. 7, the Court recommended dismissal of several deficient claims, Dkt. 8, which the District Judge assigned to this case adopted. Dkt. 10. As a result, the only claims remaining in this action are Plaintiff's individual-capacity First Amendment retaliation claims against Defendants Boylan and Miller. *See* Dkts. 8, 10. In support of his claims, Plaintiff contends both Defendants engaged in unlawful retaliation soon after he threatened to file administrative grievances and/or legal actions against them. Dkt. 7 at 8–9, 11–12, 15–16.

Following service of the Amended Complaint, Defendants moved to dismiss, arguing Plaintiff does not state viable retaliation claims. Dkt. 17. Plaintiff filed a response in opposition, Dkt. 19, and Defendants filed a reply in support, Dkt. 20. Thus, the Motion to Dismiss is fully briefed and ripe for consideration.

## II. Standard of Review

A motion to dismiss can be granted only if a plaintiff's complaint, with all factual allegations accepted as true, fails to "raise a right to relief above the speculative level". *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 545 (2007).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

REPORT AND RECOMMENDATION - 2

alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556, 570).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus, et al.*, 551 U.S. 89, 93 (2007) (internal citations omitted). However, the pleading must be more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

While the Court must accept all the allegations contained in the complaint as true, the Court does not have to accept a "legal conclusion couched as a factual allegation." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *Jones v. Community Development Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (vague and mere conclusory allegations unsupported by facts are not sufficient to state section 1983 claims); *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). While the Court is to construe a complaint liberally, such construction "may not supply essential elements of the claim that were not initially pled." *Pena*, 976 F.2d at 471.

### III. Legal Standards Applicable to Civil Detainees

A civilly committed individual is entitled to more considerate treatment and conditions than those for whom conditions of confinement are designed to punish. *Youngberg v. Romeo*, 457 U.S. 307, 319–22 (1982). Unlike convicted prisoners, a civilly detained person cannot be subject to treatment or conditions amounting to punishment, but they may be subject to unfavorable treatment if it furthers a nonpunitive interest like the "effective management of a detention facility." *See Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004). Nevertheless, court

REPORT AND RECOMMENDATION - 3

decisions which define the constitutional rights of prisoners can be relied upon to establish a floor for the constitutional rights of civil detainees. *Padilla v. Yoo*, 678 F.3d 748, 759 (9th Cir. 2012); *Hydrick v. Hunter*, 500 F.3d 978, 989 n. 7 (9th Cir. 2007). Thus, in determining whether Plaintiff sufficiently pled a constitutional violation, the Court looks to decisions defining the rights of prisoners.

**IV.    Discussion**

In their Motion, Defendants seek dismissal of the Amended Complaint for failure to state cognizable First Amendment retaliation claims. Dkt. 17. Plaintiff counters he sufficiently alleges that both Defendants engaged in unconstitutional retaliation. Dkt. 19. The Court finds that Plaintiff has not stated any viable retaliation claims and recommends the Motion to Dismiss be granted. As Plaintiff did not receive prior notice of the specific deficiencies outlined below, it is further recommended he be given leave to amend his First Amendment retaliation claims against Defendants Boylan and Miller.

**A.    Elements of a First Amendment Retaliation Claim**

The elements of a First Amendment retaliation claim arising in the custodial context include: (1) an assertion that a state actor took some adverse action against a plaintiff (2) because of (3) the plaintiff's protected conduct, and that such action (4) chilled the plaintiff's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate institutional goal. *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005)); *see also McGary v. Lindquist*, No. 13-cv-5130-RBL-JRC, 2015 WL 791730, at *7 (W.D. Wash. Feb. 25, 2015) (applying the same analysis to a retaliation claim filed by a civil detainee).

To satisfy the "because of" element, a plaintiff must allege facts showing his protected conduct was "the substantial or motivating factor behind the defendant's conduct." *Brodheim*, 584 F.3d at 1271 (citations and quotations omitted). At the pleading stage, it may be sufficient for a plaintiff to allege that an adverse action was taken soon after a defendant learned of his protected conduct. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). Even so, conclusory allegations and "[m]ere speculation that defendants acted out of retaliation [are] not sufficient." *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014). In other words, the facts alleged must support a reasonable inference that retaliation did occur, as opposed to merely showing the order of events make it conceivable that retaliation could have occurred. *See Watison*, 668 F.3d at 1114 ("Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events *from which retaliation can be inferred* is sufficient to survive dismissal.") (emphasis added); *see also West v. Ulloa*, No. 2:17-cv-04892-VBF-KES, 2019 WL 8108724, at *7 (C.D. Cal. Dec. 5, 2019), *report and recommendation adopted*, 2020 WL 5820980 (C.D. Cal. Sept. 30, 2020), *aff'd*, No. 20-56167, 2022 WL 17412865 (9th Cir. Dec. 5, 2022) (finding *pro se* plaintiff's retaliation claim deficient because, despite suspect timing, the factual allegations were insufficient to support inference of retaliatory animus beyond speculative level); *Escamilla v. City of Santa Ana*, No. 8:19-cv-02229-JAK-ADS, 2021 WL 4317974, at *1 (C.D. Cal. Sept. 22, 2021), *aff'd*, No. 21-56326, 2023 WL 7040313 (9th Cir. Oct. 26, 2023) (same).

To plead a chilling effect, a plaintiff must allege facts showing that the defendant's actions "would chill or silence a person of ordinary firmness from future First Amendment activities." *Watison*, 668 F.3d at 1114. If a defendant's acts did not actually chill the plaintiff's protected expression, then the plaintiff must show he suffered harm (or threats of harm) capable of chilling a person of ordinary firmness. *See Rhodes*, 408 F.3d at 568 n.11 ("[H]arm that is more

than minimal will almost always have a chilling effect.") (citing *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995)).

As for the fifth element that the action did not reasonably advance a legitimate institutional goal, legitimate institutional goals include "the preservation of internal order and discipline" and "the maintenance of institutional security." *Procunier v. Martinez,* 416 U.S. 396, 412 (1974), *limited by Thornburgh v. Abbott,* 490 U.S. 401 (1989). An action that furthers a legitimate institutional goal it is not retaliation. *Barnett v. Centoni,* 31 F.3d 813, 815–16 (9th Cir. 1994) (citing *Rizzo v. Dawson,* 778 F.2d 527, 532 (9th Cir. 1985)). "A plaintiff successfully pleads this element by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious or that they were unnecessary to the maintenance of order in the institution." *Watison*, 668 F.3d at 1114–15.

**B.      First Amendment Retaliation Claim against Defendant Miller**

Plaintiff alleges Defendant Miller retaliated against him by submitting a false report that prevented him from obtaining a level advancement at SCC, thereby denying him access to new job opportunities and additional privileges. *Id.* at 8–9. While his advancement request was pending, on September 17, 2021, Plaintiff met with Defendant Miller to discuss redactions she made to magazines Plaintiff received in the mail. *Id.* at 8–9. When their discussion reached an impasse, Plaintiff informed Defendant Miller he would be filing a formal grievance and lawsuit against her. *Id.* at 9. A week later, on September 23, 2021, Plaintiff's advancement request was reviewed by a committee. *Id.* at 9. He claims Defendant Miller attended his advancement hearing and submitted a report "falsely" indicating Plaintiff had not displayed "rule-observant behavior." *Id.* He contends the advancement committee denied his request "based solely upon the information" provided by Defendant Miller. *Id.* at 9. Plaintiff notes he "felt" he met the criteria

for level advancement "because he exhibited SCC rule-observant behavior without having any documented prior behavior redirections, or interventions." *Id.* at 8.

Plaintiff does not sufficiently link Defendant Miller's alleged retaliatory action with his protected conduct. Retaliatory motive may be shown in various ways, including the proximate timing of the protected conduct and allegedly retaliatory act and other circumstantial evidence. *See Watison*, 668 F.3d at 1114. However, mere speculation that defendants acted out of retaliation is not sufficient. *See Wood*, 753 F.3d at 905. To demonstrate retaliatory motive, Plaintiff appears to rely on the fact that Defendant Miller allegedly submitted her report within a few days of Plaintiff's threats to file a grievance and lawsuit. *See* Dkt. 19. However, the Amended Complaint fails to sufficiently allege any facts showing Defendant Miller's alleged false report was related to Plaintiff's protected conduct.

For example, Plaintiff does not plausibly allege retaliatory motive based on the proximity in time between his statements about filing a formal grievance and lawsuit against Defendant Miller and the advancement hearing. Moreover, the allegations indicate Defendant Miller was involved in Plaintiff's advancement process prior to these protected statements. Also, Plaintiff fails to allege when Defendant Miller completed the alleged retaliatory report she presented to the advancement committee. Based on the allegations in the Amended Complaint, it is plausible Defendant Miller's report was completed prior to the protected statements Plaintiff made to Defendant Miller on September 17, 2021, or that it was related to other unprotected interactions between Defendant Miller and Plaintiff. Plaintiff's allegations are, at best, speculative and conclusory. *See West*, 2019 WL 8108724, at *7 (concluding temporal proximity alone is insufficient where adverse actions are "well explained by other circumstances"). Therefore,

REPORT AND RECOMMENDATION - 7

1  Plaintiff has not sufficiently alleged Defendant Miller presented a false report to the

2  advancement committee in retaliation for Plaintiff's protected conduct.

3        C.      **First Amendment Retaliation Claim against Defendant Boylan**

4      Plaintiff alleges Defendant Boylan engaged in unlawful retaliation by "falsely" reporting

5  that he possessed unauthorized documents, which prompted a search of his cell and seizure of

6  various personal items. Dkt. 7 at 11–12, 15. Plaintiff's current[1] disagreement with Defendant

7  Boylan began on October 20, 2022, when he saw her in the mailroom opening an envelope

8  marked "legal mail" that was sent to him by his attorney. *Id.* at 11. He further alleges Defendant

9  Boylan seized thirteen pages of legal documents "containing photographic images" and held

10 those documents for review. *Id.* Plaintiff told Defendant Boylan that he objected to the seizure

11 and review of his documents and threatened "to file legal actions against her." *Id.*

12     Plaintiff left the mailroom and immediately contacted SCC's Legal Coordinator, Nicole

13 Brees, about the documents seized by Defendant Boylan. *Id.* He alleges Ms. Brees determined

14 the disputed documents "complied with all legal mail policies [at SCC]" and "directed that the

15 documents be returned to [Plaintiff] as reviewed and approved by her." *Id.* at 11. On October 24,

16 2022, Defendant Boylan allegedly received a form signed by Ms. Brees indicating the disputed

17 documents were returned to Plaintiff "as approved by her." *Id.* at 12. Plaintiff asserts that, despite

18 this approval, Defendant Boylan "falsely reported" to SCC management he "obtained

19 photographs from Ms. Brees [that he] was not authorized to have in his possession." *Id.* SCC

20 officials searched Plaintiff's cell on October 26, 2022, during which the disputed documents,

21 fifty-five additional photographs, and other items not listed on the search report were seized. *Id.*

22

23     [1] Plaintiff also describes a disagreement with Defendant Boylan occurring in June 2021 and alleges Plaintiff filed a formal grievance against Defendant Boylan at that time. Dkt. 7 at 7. There is no allegation of retaliation flowing from the June 2021 disagreement or grievance.

24

REPORT AND RECOMMENDATION - 8

1     Plaintiff does not show Defendant Boylan acted as she did "because of" his protected
2 conduct. *Brodheim*, 584 F.3d at 1271. As with Defendant Miller, Plaintiff again appears to rely
3 on timing to show a causal connection between Defendant Boylan's conduct and the threats to
4 sue, but the alleged sequence of events is insufficient to establish a reasonable inference of
5 retaliation. *See West*, 2019 WL 8108724, at *7; *Escamilla*, 2021 WL 4317974, at *1. In
6 particular, Plaintiff alleges he threatened to file legal action against Defendant Boylan on
7 October 20, 2022. *Id.* at 11–12. Four days later, Defendant Boylan learned that the pages she
8 seized had been returned to Plaintiff. *Id.* at 12. Defendant Boylan then reported what she learned
9 about the disputed documents to SCC leadership. *Id.* Specifically, Defendant Boylan allegedly
10 reported that Plaintiff obtained the disputed documents from Ms. Brees and that he was not
11 authorized to possess them. *Id.*

12     The alleged sequence of events suggests Defendant Boylan acted as she did, and *when*
13 she did, because the disputed documents were returned to Plaintiff. Because the timing of
14 Defendant Boylan's conduct is explainable by other circumstances, temporal proximity is not
15 enough to support an inference of retaliation. *See West*, 2019 WL 8108724, at *7. Further, the
16 Court notes that Plaintiff alleges he filed grievances against Defendant Boylan in June of 2021
17 and Defendant Boylan did not take any adverse actions against Plaintiff at that time. These
18 allegations tend to minimize any alleged link between the timing of his October 2022 grievance
19 and the alleged retaliatory conduct. Plaintiff's allegations require speculation to conclude that
20 Defendant Boylan made her report because of his protected conduct. Therefore, Plaintiff has not
21 sufficiently alleged Defendant Boylan made a false report to SCC leadership in retaliation for
22 Plaintiff's protected conduct.

As the Amended Complaint does not establish Plaintiff protected conduct was the substantial or motivating factor behind either Defendant's alleged adverse action, Plaintiff has failed to state a cognizable retaliation claim against Defendants Boylan and Miller. Accordingly, the undersigned recommends the Motion to Dismiss (Dkt. 17) be granted.

### D.   Dismissal with Leave to Amend

Having concluded that Plaintiff's claims should be dismissed for failure to state a claim, the Court next considers whether he should be granted leave to cure the deficiencies through amendment. The Ninth Circuit has "established that a *pro se* litigant bringing a civil rights suit must have an opportunity to amend the complaint to overcome deficiencies unless it is clear that they cannot be overcome by amendment." *Eldridge v. Block*, 832 F.2d 1132, 1135–36 (9th Cir. 1987). Although Plaintiff does not allege sufficient facts to meet each element of his retaliation claims, he was not notified of deficiencies discussed here and has not been given an opportunity to prepare amended pleadings with such notice. At this time, the Court cannot definitively conclude Plaintiff will be unable to overcome these deficiencies.

Accordingly, the Court recommends that Plaintiff be given leave to amend so that he may attempt to cure the deficiencies outlined above.

### V.   Conclusion

For the reasons outlined above, the undersigned recommends the Motion to Dismiss filed by Defendants Tammy Boylan and Dominique Miller (Dkt. 17) be granted. It is further recommended that Plaintiff be granted leave to amend his First Amendment retaliation claims against Defendant Boylan and Miller.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit not later than **fourteen (14) days** from the date on which this

REPORT AND RECOMMENDATION - 10

Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar **fourteen (14) days** from the date they are filed. Responses to objections may be filed by **the day before the noting date**. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **November 14, 2024**.

Dated this 31st day of October, 2024.

David W. Christel
United States Magistrate Judge

REPORT AND RECOMMENDATION - 11